**SO ORDERED.**

**SIGNED this 09 day of January, 2007.**

_____
Randy D. Doub
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
FAYETTEVILLE DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| **HERITAGE MEDICAL ASSOCIATES, P.A.** | 04-02458-8-RDD |
| **DEBTOR** | |
| **MICHAEL P. PEAVEY, Trustee** | |
| Plaintiff | ADVERSARY PROCEEDING NO. |
| v. | 06-00056-8-RDD-AP |
| **LEONARD PAUL BRADLEY, SUE BRADLEY** and **THE CHURCH OF SPI** | |
| Defendants | |

**ORDER DENYING DISQUALIFICATION OF TRUSTEE**

This adversary proceeding comes before the court on the motion of the defendants for the disqualification of the trustee. A hearing was held in Fayetteville, North Carolina on January 4, 2007.

Heritage Medical Associates, P.A. ("Heritage") filed a petition for relief pursuant to chapter 11 of the Bankruptcy Code on March 25, 2004. The defendant, Mr. Bradley, is a former president of Heritage. The case was converted to a chapter 7 on June 25, 2004, at which time Mr. Peavey was appointed trustee. On March 24, 2006, Mr. Peavey filed this adversary proceeding against the defendants seeking recovery of assets and funds which he alleges were preferentially or fraudulently conveyed.

The defendants allege in their motion that prior to and following the filing of the above-captioned bankruptcy case, the trustee, Mr. Peavey, advised the defendant, Mr. Bradley, on matters in other bankruptcies in which Mr. Bradley was a principal and on matters related to the defendant, The Church of SPI ("CSPI"), with regard to this bankruptcy case. Therefore, it is alleged that the trustee is aware of information which was obtained while acting in an advisory capacity to Mr. Bradley, which has been used against Mr. Bradley and the other defendants in the present adversary proceeding.

At the hearing of this matter, the defendants produced numerous emails between Mr. Peavey and Mr. Bradley which were exchanged during the period between July 2004 and March 2006. Counsel for the defendants referenced specific emails in which defendants allege Mr. Peavey acted in an advisory capacity to Mr. Bradley. In an email dated January 25, 2005, responding to an inquiry from Mr. Bradley regarding correcting items in a bankruptcy involving a former business associate of Mr. Bradley, Mr. Peavey stated that Mr. Bradley could "go to the hearing by yourself or through counsel. . . . A creditor would be a proper party to raise these issues." In an email dated March 10, 2005, in response to information provided by Mr. Bradley regarding a former business associate, Mr. Peavey provided Mr. Bradley with a bankruptcy statute and requested information regarding the business associates' dealings with Heritage. In an email dated March 16, 2005, in response to an inquiry by Mr. Bradley regarding lists

2

of assets of Heritage and a related company, Primary Care Plus, LLC ("Primary"), Mr. Peavey provided Mr. Bradley with information regarding the lists of assets and regarding his intent to pursue a claim against another party for an alleged preferential transfer made by Heritage.  In an email dated March 30, 2005, in response to an inquiry by Mr. Bradley regarding the filing of a claim by CSPI in the bankruptcy of a former business associate, Mr. Peavey stated, "Go ahead and file."  In an email dated April 12, 2005, in response to an email from Mr. Bradley regarding conflicts of interest in relation to the bankruptcy of a former business associate, Mr. Peavey gives his opinion regarding the conflict.

Mr. Peavey was attorney for Wilson Gilmore Services ("Wilson Gilmore") in Case No. 05-06085-8-RDD.  Mr. Bradley was comptroller and officer of Wilson Gilmore.  Wilson Gilmore had no relationship with Heritage.  In an email dated March 29, 2006, in response to an inquiry regarding the withdrawal from bankruptcy of Wilson Gilmore, Mr. Peavey agrees to provide Mr. Bradley with copies of requested documents and states, "As to the third sentence I am not aware of a section or subsection that *precludes* withdrawing from a bankruptcy case when in the best interest of creditors, the estate, and/or parties in interest."  After further inquiry from Mr. Bradley on that same date, Mr. Peavey responded, "Generally speaking the debtor doesn't have a right to dismiss unlike an individual chapter 13 debtor.  Here the trustee would probably resist.  My advice is to let the case proceed."

Counsel for the defendants argued that the emails presented provide proof of violation of Rules 1.8(b) and Rule 1.9(a) of the Rules of Professional Conduct of the North Carolina State Bar.  Rule 1.8(b) states:

> A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client gives informed consent, except as permitted or required by these Rules.

3

Rule 1.9(a) states:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

In response, Mr. Peavey acknowledged the exchange of emails between himself and Mr. Bradley. He further acknowledged that Mr. Bradley had referred bankruptcy clients to him in January 2005, after inquiring as to the appropriateness of the referrals. These clients were James and Patricia Dixon (Case No. 05-04596-8-ATS) and Wilson Gilmore (Case No. 05-06085-8-RDD). These cases had no relationship to Heritage. Mr. Peavey alleged that any information shared with Mr. Bradley regarding Heritage was shared with him because of his position as former president of Heritage. Mr. Peavey alleged that no information was obtained from Mr. Bradley which has been used in this adversary proceeding. Mr. Peavey alleged that the information which instigated the filing of this adversary proceeding was obtained by discussions with other persons involved in Heritage and by reviewing the Statement of Financial Affairs filed by Heritage. He admitted discussing Heritage with Mr. Bradley, as he was president and chief financial officer during the operation of the business. Mr. Peavey stated at the hearing of this matter that he had verbally told Mr. Bradley that Mr. Peavey was not his attorney and did not represent him. He also indicated that he had informed Mr. Bradley that he may have to sue him as a result of transactions by Heritage and Primary with which he was involved. Mr. Peavey explained that the discussions he had with Mr. Bradley with regard to Heritage were carried out pursuant to his powers as a trustee under 11 U.S.C. § 704(a)(4), which allows a trustee to "investigate the financial affairs of the debtor."

After hearing the arguments of counsel and reviewing the emails submitted by the defendants, the defendant's motion to disqualify Mr. Peavey as trustee in this action is **DENIED**.  The court finds that, although Mr. Peavey did act as counsel for Wilson Gilmore with regard to its bankruptcy and Mr. Bradley was the comptroller for Wilson Gilmore, the Wilson Gilmore bankruptcy is not the same or a substantially related matter to the Heritage bankruptcy.  Therefore, there is no violation of Rule 1.9(a) of the Rules of Professional Conduct of the North Carolina State Bar.  The court further finds that nothing contained in the emails between Mr. Peavey and Mr. Bradley is related to the personal information of Mr. Bradley or CSPI.  Therefore, there is no violation of Rule 1.8(b) of the Rules of Professional Conduct of the North Carolina State Bar.  All other matters involving Mr. Peavey and Mr. Bradley appear to fall within the trustee's duties in 11 U.S.C. § 704(a)(4), which allows a trustee to "investigate the financial affairs of the debtor." and § 704(a)(7), which allows the trustee to "furnish such information concerning the estate and the estate's administration as is requested by a party in interest."

Although the court finds that there is no basis for disqualifying Mr. Peavey as trustee in this matter, the court notes that trustees must take the utmost care in corresponding and communicating with officers and principals of debtors and other parties in interest in cases to which they are appointed, regardless of the subject matter of the correspondence, in order to avoid the appearance of collusion or impropriety.  A trustee, by taking on a client who was referred to the trustee by a principal in a case being administered by the trustee, may leave himself open to charges of not properly doing his trustee duty, if a claim exists against the principal officer which is not vigorously pursued by the trustee.  In this case, such referrals did not deter or diminish Mr. Peavey's investigation and pursuit of claims of the bankruptcy estate against Mr. Bradley and other defendants.

This adversary proceeding shall proceed in accordance with the scheduling order entered October 2, 2006, unless a request for modification is made by either party.

**SO ORDERED.**

**END OF DOCUMENT**